**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| FRANKIE RAMSEY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **Case no. 1:15CV214 PLC** |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Frankie Ramsey seeks review of the decision of the Social Security Commissioner, Nancy Berryhill, denying his applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act.[2] Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

### I. *Background and Procedural History*

On June 27, 2012, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income alleging he was disabled as of April 1, 2003 as a result of a psychological disorder, an identity disorder, depression, and a learning disability.[3] (Tr. 68, 191-97, 198-203). The Social Security Administration (SSA) denied Plaintiff's claims, and he filed a

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 7).

[3] The SSA denied Plaintiff's prior application for benefits on January 23, 2009. (Tr. 11). In this case, the ALJ accepted the SSA's previous finding that Plaintiff was not under a disability through January 23, 2009 and considered whether Plaintiff was disabled as of January 24, 2009, "the date after the prior determination through the date of this decision." (<u>Id.</u>).

timely request for a hearing before an administrative law judge (ALJ). (Tr. 103-07, 108-12, 113-15).

The SSA granted Plaintiff's request for review, and an ALJ conducted a hearing on March 10, 2014, at which Plaintiff, Plaintiff's mother, and a vocational expert testified. (Tr. 33-65). At the hearing, Plaintiff testified that he was born on March 1, 1968. (Tr. 40). Plaintiff was single and lived with his parents. (Tr. 41). In elementary school, Plaintiff attended special education classes. (Tr. 52). He earned a Bachelor's degree in 2002 and "had some EMT training" but "failed the exams." (Tr. 41-42). He most recently worked for approximately one year for RGIS Inventory and prior to that, he "did some stocking" at Target, but was fired because he "wasn't doing the job fast enough or – correctly." (Tr. 42-43). In 2002 and 2003, he worked approximately nine months for Procter & Gamble "packaging tissue." (Tr. 43). Plaintiff also worked for a clothing manufacturer for a period of time, where he was "on the assembly line . . . cleaning the jackets and shipping them out." (Tr. 43).

When the ALJ asked Plaintiff "what is it that makes it difficult for you to work?," Plaintiff answered, "Now I'm less motivated and I feel depressed a lot, crying and not feeling good." (Tr. 44). Plaintiff testified that he visited his psychiatrist every two months and took medication for depression. (Tr. 44, 51). In regard to his medication, Plaintiff stated, "[s]ome days it helps and other days they have no effect," and it made him "very, very tired." (Tr. 44, 51). Plaintiff stated that, on a typical day, "I'll wake up around noon and I sit down and basically do nothing all day." (Tr. 47). He had no hobbies and, although he had a driver's license, he did not drive. (Tr. 47).

At the prompting of his attorney, Plaintiff stated "The memories of Jack Kennedy's [sic] is branded in my mind. I have flashbacks. I have memories of his life . . . ." (Tr. 47). As an

example, Plaintiff described a memory he had of traveling to Scotland with "Bobby and Joey . . . to see dad, who was the ambassador to Scotland." (Tr. 48). Plaintiff testified that these "memories and flashbacks" occurred daily, and he would momentarily forget his true identity, but he "can put this aside when [he] need[s] to." (Tr. 49).

Plaintiff testified that he began receiving vocational rehabilitations services during his second year of college, and that service helped him get his job at RGIS Inventory. (Tr. 50). When Plaintiff's counsel asked him whether he continued to receive vocational rehabilitation services, Plaintiff answered, "they keep trying to find me work, but I just can't seem to find work." (Tr. 50).

Plaintiff's mother, Linda Ramsey, testified that she saw Plaintiff frequently because "[s]ometimes he comes and stays for, I don't know, a week maybe or so . . . he's always in and out" but he "has his own place." (Tr. 53). Mrs. Ramsey described Plaintiff's house as "cluttered and a mess." (Id.). Sometimes Plaintiff went grocery shopping with Mrs. Ramsey and sometimes he went by himself. (Id.). According to Mrs. Ramsey, Plaintiff was placed in "a learning disability class" in first grade and "he was in it until he did get in high school and then I guess they just put him in a regular class, I don't know." (Tr. 54). When Plaintiff stays at her house "he doesn't do anything" and, some days, he does not leave his bedroom. (Tr. 56).

Finally, a vocational expert testified at the hearing. (Tr. 60-64). The ALJ asked the vocational expert to consider a hypothetical individual "able to perform work at all exertional levels, but that work [sic] mentally, the individual would be able to understand, carry out and remember only simple/routine/repetitive tasks involving only simple work-related decisions with few, if any, workplace changes; no interaction with the public; could be around co-workers throughout the day, but with only brief/incidental interaction with co-workers and no tandem

tasks." (Tr. 61). The vocational expert stated that such an individual could perform Plaintiff's past work as hand trimmer, or lint remover. (Id.). In the alternative, that individual could perform the jobs of floor waxer, laundry laborer, and machine feeder. (Tr. 62). When the ALJ added that the hypothetical individual suffered "delusions of being the former president, John F. Kennedy" and "those delusions . . . made him off task more than 15 percent of the workday," the vocational expert stated that the individual could not perform the jobs he previously identified. (Id.). Additionally, if the individual were absent from work one day per month, "it probably would eliminate these unskilled [jobs]." (Tr. 63). Finally, when Plaintiff's counsel added that the hypothetical individual "was moderately impaired in his ability to understand and remember instructions" and "markedly impaired in his ability to sustain concentration" and "in his ability to persistent in tasks," the vocational expert stated that such individual could not work. (Id.).

In a decision dated April 23, 2014, the ALJ applied the five-step evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920[4] and found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 23, 2009, through the date of this decision[.]" (Tr. 11-21). The ALJ found that Plaintiff had the following severe impairments: psychotic disorder, not otherwise specified; personality disorder; and depression. (Tr. 13). Additionally, the ALJ found that Plaintiff had the non-severe impairments of migraine headaches and hypertension. (Tr. 14).

After reviewing Plaintiff's testimony and the medical records and finding that Plaintiff was "not entirely credible," the ALJ determined that Plaintiff had the residual functional capacity (RFC) to:

---

[4] To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

perform a full range of work at all exertional levels but with the following nonexertional limitations: He would be able to understand, carry out and remember simple, routine and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes. He should not interact with members of the public but could be around co-workers throughout the day with only brief, incidental interaction and no tandem tasks.

(Tr. 15). Finally, the ALJ found that Plaintiff was capable of performing his past relevant work as a hand trimmer or, in the alternative, could perform other occupations that existed in significant numbers in the national economy, such as the jobs of floor waxer, laundry laborer, or machine feeder. (Tr. 19-20).

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review on September 23, 2015. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.    *Standard of Review*

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Boerst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrue v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

### III. Discussion

Plaintiff claims that substantial evidence does not support the ALJ's determination that he was not disabled. More specifically, Plaintiff asserts that the ALJ erred in: (1) improperly weighing the medical opinion evidence, which resulted in an inaccurate RFC; and (2) finding that Plaintiff was not entirely credible.

#### A. Medical opinion evidence

Plaintiff argues the ALJ erred in formulating his RFC because the ALJ assigned too little weight to the opinion of the consulting psychologist, Dr. Ben Lanpher, and too much weight to the opinion of the non-treating State agency psychologist, Dr. Scott Brandhorst. The Commissioner counters that the ALJ properly evaluated the medical opinion evidence and the RFC is therefore supported by substantial evidence.

An RFC determination is to be "based on all the relevant medical and other evidence in [the] record." 20 CFR § 404.1520(e). This includes medical records, observations of treating physicians and others, and an individual's own description of his or her limitations. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). Unless the ALJ assigns controlling weight to a treating physician's opinion, the ALJ must explain the weight given to every medical opinion of

record, regardless of its source. <u>See</u> 20 C.F.R. §§ 404.1527(c), (e)(2)(ii); 416.927(c), (e)(2)(ii).

When determining the appropriate amount of weight to give a medical opinion from a non-treating source, the ALJ considers the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. <u>Wiese v. Astrue</u>, 552 F.3d 728, 731 (8th Cir. 2009). <u>See also</u> 20 C.F.R. §§ 404.1527(c); 416.927(c). "The opinion of a consulting physician, who examines a claimant once, or not at all, generally receives very little weight." <u>Hayes v. Astrue</u>, 569 F.Supp.2d 910, 924 (E.D.Mo. 2008) (citing <u>Singh v. Apfel</u>, 222 F.3d 448, 452 (8th Cir. 2000)).

### *1. Dr. Lanpher*

Dr. Lanpher completed a psychological evaluation for Plaintiff on August 28, 2012 based upon an interview with Plaintiff and Plaintiff's medical records. (Tr. 405-08). In the interview, when Dr. Lanpher asked Plaintiff to describe his "problems," Plaintiff answered: "Distracted, I guess. I have ADD and I get distracted very easily. I also get annoyed real easily. I have sleeping problems as well. I sometimes hear voices. Depression is my biggest problem." (Tr. 405). Plaintiff stated he had been seeing Lori Voss for counseling and Dr. Sayed Sayeed for psychiatric outpatient treatment for approximately six months. (Tr. 406). Dr. Sayeed prescribed Plaintiff fluoxetine, trazodone, and Abilify. (Tr. 405).

During the interview with Dr. Lanpher, Plaintiff described hearing "voices in my head, from a past president . . . . I feel like I am a dead president. I don't know if this is from a past life or what." (Tr. 406). Plaintiff stated that he has "taken on the identity of John Kennedy, at times, since his childhood" and felt "depressed most of the time, with occasional crying spells." (<u>Id.</u>). Additionally, Plaintiff advised Dr. Lanpher that he received messages from John Kennedy

"on a daily basis, especially when he is alone" and "he would rather not have these experiences, describing them as 'a distraction.'" (Tr. 407).

Plaintiff informed Dr. Lanpher that he attended special education classes until high school, was held back in first grade, and required fourteen years to complete his college degree. (Tr. 406). When asked to describe a typical day, Plaintiff reported that he usually arose at 8:00 a.m., took medication, ate breakfast, "then sleeps for an hour or two." (Id.). After lunch, he would "walk around the garden, then drive to his house to mow the lawn or paint." (Id.). In the evenings, he returned to his parents' house to spend the night because "he feels more comfortable staying in his old bedroom." (Tr. 406-07).

Dr. Lanpher noted that Plaintiff's hygiene and dress were fair, hair was dyed blonde, affect was blunted, emotions were depressed, speech was monotone and soft, movement was lethargic, and eye contact was fair. (Tr. 407). Claimant demonstrated good abstract thinking abilities, was fairly oriented to time and place, and received a score of 22 out of 30 on the Mini-Mental Status Exam. (Id.). Dr. Lanpher concluded that Plaintiff "appear[ed] to be functioning within the low-average to borderline range of intellectual disability" and was "exhibiting symptoms of delusional thoughts, recurrent depression, and distractability." (Tr. 408). Dr. Lanpher diagnosed Plaintiff with: psychotic disorder, NOS; depressive disorder, NOS; and schizotypal personality disorder. (Id.). Dr. Lanpher assigned Plaintiff a current GAF of 45, and noted that his highest GAF for the past year was 50. (Id.). Dr. Lanpher concluded that Plaintiff was: capable of managing his finances with some assistance; moderately impaired in his ability to understand and remember instructions; and markedly impaired in his abilities to sustain concentration, interact socially, adapt to his environment, and persist at tasks. (Id.).

In his decision, the ALJ reviewed Dr. Lanpher's evaluation and found his "opinions to be inconsistent with the medical evidence generally." (Tr. 18). The ALJ explained: "[Plaintiff's] mental health treatment notes generally fail to document the level of limitation set forth in Dr. Lanpher's opinions. For example, Dr. Syed Sayeed, M.D., noted in October 2013 that the claimant was doing fairly well on his medications." (Id.). The ALJ therefore assigned Dr. Lanpher's opinion "little weight." (Id.).

The ALJ may reject the conclusions of any medical expert, whether hired by the government or the claimant, if they are inconsistent with the record as a whole. Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). The record shows that from October 2011 through May 2012, Plaintiff received mental health treatment, specifically, medication, from his primary care providers. In November 2011, Nurse Practitioner Furr noted that Plaintiff was improving with the fluoxetine and she noted "no depression" in December 2011 and February 2012. (Tr. 377-81).

In May 2012, Plaintiff began receiving mental health treatment at Bootheel Counseling Services. At his sessions with Ms. Voss in June 2012 and July 2012, she noted that Plaintiff's mood, appearance, thought content, behavior, affect, thought process, and speech were appropriate. (Tr. 402-04). In June 2012, Plaintiff saw Dr. Sayeed, who increased his fluoxetine and prescribed Abilify and trazadone. (Tr. 398). Plaintiff received no mental health treatment between July 11, 2012 and September 3, 2013, and in October 2013, Dr. Sayeed noted that Plaintiff was doing fairly well on his medication. (Tr. 411). The Court agrees with the ALJ's determination that the treatment notes of Plaintiff's medical providers are not consistent with Dr. Lanpher's opinion that Plaintiff was markedly impaired in his abilities to sustain concentration, interact socially, adapt to his environment, or persist in tasks.

Furthermore, despite assigning Dr. Lanpher's opinion "little weight," the ALJ included significant exertional limitations in the RFC. Specifically, the ALJ limited Plaintiff to "simple, routine and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes," "only brief, incidental interaction" with coworkers, and "no tandem tasks." (Tr. 15). Based on the above, the Court finds that the ALJ did not err in assigning Dr. Lanpher's opinion "little weight."[5]

### 2. Dr. Brandhorst

Dr. Brandhorst, a state agency, non-examining consultative psychologist, completed a psychiatric review technique and mental RFC assessment for Plaintiff on September 4, 2012. (Tr. 73-77). Based entirely upon Plaintiff's medical records, Dr. Brandhorst opined that Plaintiff suffered: schizophrenic, paranoid, and other psychotic disorders; affective disorders; and personality disorders. (Tr. 73). He determined that Plaintiff was mildly restricted in activities of daily living and moderately limited in social functioning and the ability to maintain concentration, persistence, or pace. (Id.).

Dr. Brandhorst found that Plaintiff's reports of his symptoms and limitations were "partially credible" based on Plaintiff's activities of daily living and medical records. (Id.). Dr. Brandhorst explained:

> Claimant [sic] completed ADL's show claimant reports he needs reminders to take meds; his parents complete meals and shopping, isolates self from friends, and he has memory problems and difficulty concentrating. He indicated he is able to count change, goes out alone, mows his property, able to make salads, gets along fine with authority figures, and interacts with his parents on a daily basis. He is able to count change. He has a valid driver's license and is able to drive. Based on the total evidence with the MER, the claimant allegations are

---

[5] Plaintiff also asserts that the ALJ's analysis of Dr. Lanpher's opinion was insufficient because he discussed only one factor – consistency – and failed to address the five main remaining factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). Plaintiff cites no authority for the proposition that an ALJ must address each of the regulatory factors when weighing the opinion of a nontreating, consulting physician.

only partially credible, at the very best. Additional limitations are not supported by the totality of evidence in file. The claimant is capable of simple, one-two step tasks on a sustained basis.

(Tr. 77). Dr. Brandhorst considered Dr. Lanpher's evaluation and found it unpersuasive, stating: "MSO is based on a one time exam and information is not consistent with evidence with the MER, so limited weight is given." (Tr. 74).

In formulating Plaintiff's RFC, the ALJ assigned Dr. Brandhorst's opinion "some weight as it is mostly consistent with the medical evidence."[6] (Tr. 19). However, the ALJ determined that Plaintiff's RFC required "additional parameters with regard to public interaction . . . because of the claimant's moderate limitations in social functioning." (Id.).

"[T]he opinions of nonexamining medical sources are generally given less weight than those of examining sources." Papesh v. Colvin, 786 F.3d 1126, 1133 (8th Cir. 2013) (quoting Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010)). When evaluating a non-examining source's opinion, the degree to which the opinion considers all of the pertinent evidence in the claim must be considered. Wildman, 596 F.3d at 967. "[B]ecause nonexamining sources have no examining or treating relationship . . ., the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." Papesh, 786 F.3d at 1133 (quoting 20 C.F.R. § 404.1527(c)(3)). "The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

A review of the psychiatric review technique and mental RFC assessment completed by Dr. Brandhorst shows that he examined all of the evidence of record existing at that time with respect to Plaintiff's impairments, including Plaintiff's educational records, Dr. Jordan's 2009

_____

[6] Earlier in the decision, when assessing the severity of Plaintiff's alleged impairments, the ALJ stated that opinion of the "State agency psychological consultant" was "consistent with the evidence of record and [was] given significant weight." (Tr. 15).

consultative exam, Plaintiff's mental health treatment records from 2012, Dr. Lanpher's 2012 consultative exam, and Plaintiff's adult function report. (Tr. 76-76). Although Dr. Brandhorst discredited Dr. Lanpher's opinion in a single sentence, stating that it was inconsistent with Plaintiff's medical records, Dr. Brandhorst provided a detailed review of the medical records and explained how those records supported his own mental RFC assessment. Specifically, Dr. Brandhorst noted that the following evidence supporting a less restrictive RFC: Plaintiff did not receive special education services in high school and he earned a college degree; "there was no reported history of psychiatric hospitalizations and claimant denied any previous outpatient psychiatric treatment [prior to May 2012]," Plaintiff's GAF scores "consistently range in the 50-59 range, denoting moderate severity in functioning"; and "MSE notes appropriate appearance and mood, goal directed thought process, fair judgment, and poor insight." (Tr. 76).

To the extent that Plaintiff argues that the ALJ based his decision upon Dr. Brandhorst's opinion, that argument is misplaced. The ALJ specifically noted that he was only assigning Dr. Brandhorst's opinion "some weight" because, despite finding that that Plaintiff was "moderately limited" in several areas of social functioning, Dr. Brandhorst did not describe social interaction limitations in the mental RFC assessment. Accordingly, the ALJ included in Plaintiff's RFC greater exertional limitations than those recommended by Dr. Brandhorst.

Upon review of the record and the ALJ's decision, the Court finds that the ALJ evaluated all of the evidence of record and provided good reasons for the weight he accorded Dr. Lanpher's and Dr. Brandhorst's opinions. Because substantial evidence on the record as a whole supports the ALJ's determination to assign their opinions little weight and some weight, respectively, the Court will not disturb that determination.

*B. Credibility*

Plaintiff argues that the ALJ erred by "failing to provide a proper credibility analysis as required by SSR 96-7p[7] in that the ALJ failed to base the analysis on the substantial evidence of record." (ECF No. 16 at 12). The Commissioner counters that substantial evidence supported the ALJ's evaluation of Plaintiff's subjective complaints.

Before determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (citing Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001)). An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. SSR 96–7p. See also Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (citing Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991)).

Here, the ALJ found that, while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" (Tr. 17). The

_____

[7] SSR 16-3p superseded SSR 96-7p, which was in effect at the time of the ALJ's decision in April 2014. The superseding 2016 ruling rejects the use of the term "credibility," because "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p. However, in terms of the evaluation of symptoms, both rulings direct ALJs to consider all evidence in the record, and both incorporate the factors to be considered under Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984) and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). See Dean v. Berryhill, Case No. 4:16-V-43 DDN, 2017 WL 1036389, at *5 n.5 (E.D.Mo. March 17, 2017). Because SSR 16-3p does not alter the rule that the ALJ must provide specific reasons for the weight accorded a plaintiff's subjective complaints, this court need not reach the issue of whether it applies retroactively. See id.

ALJ wove his credibility analysis into the RFC determination, highlighting the inconsistencies in the record. (Tr. 16-20).

First, the ALJ found that Plaintiff's reported activities of daily living suggested that his mental impairments were less limiting than he alleged. See Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."). Specifically, the ALJ noted that Plaintiff admitted the abilities to independently perform personal care tasks, drive, prepare a simple meal, and maintain his lawn. (Id.). Plaintiff also "spends time with his parents, watches television, exercises daily and visits with others[.]" (Id.). The ALJ concluded that Plaintiff's "capacity to perform these tasks independently is a strong indication that [Plaintiff] retains the capacity to perform the requisite physical mental tasks that are part of everyday basic work activity." (Id.).

Additionally, the ALJ noted that Plaintiff's medical records "fail[ed] to shed light on [Plaintiff's] condition for much of the relevant period." (Tr. 17). Plaintiff's alleged date of onset was January 24, 2009. (Tr. 20). The record reflects that Plaintiff first reported depression to his primary care provider in October 2011, at which time she prescribed fluoxetine, and Plaintiff experienced no depression through February 2012. (Tr. 17, 365-84, 382-84). As the ALJ observed, Plaintiff's "reported mental status changed in May 2012, when he participated in an intake examination at Bootheel Counseling Services." (Tr. 17, 391-94). Plaintiff received mental health treatment at Bootheel Counseling Services in June and July 2012 and then ceased treatment until November 3, 2013. (Tr. 402, 411-13). Plaintiff's last session at Bootheel Counseling Services was on October 29, 2013. (Tr. 411-413). The conservative and sporadic treatment and lack of hospitalization suggests that Plaintiff's mental impairments were less disabling than he alleged. See Page v. Astrue, 484 F.3d 1040, 1044 (8th Cir. 2007) (affirming

ALJ's determination that mental health issues were not severe where claimant sought very limited treatment).

Contradictory statements that Plaintiff made to treating and consulting physicians "are yet another reason to discount [his] credibility." Julin v. Colvin, 826 F.3d 1082, 1087 (8th Cir. 2016). The ALJ observed that, while Plaintiff testified that he required fourteen years to earn a bachelor's degree, he told a consulting physician in 2009 that it took him nine years. (Tr. 17). He also reported in 2009 that he was retained for two grades, but reported only one year to Dr. Lanpher. (Id.).

Finally, the ALJ considered Plaintiff's work history and found that Plaintiff's "history of intermittent work" and the fact that "his earnings typically fell well below the level of substantial gainful activity" suggested that Plaintiff "is not motivated to work and that his alleged inability to work does not stem from any impairment." (Tr. 18). "A lack of work history may indicate a lack of motivation to work rather than a lack of ability." Pearsall, 274 F.3d at 1218 (citing Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993)).

In sum, the ALJ discussed many of the factors set forth in Polaski and SSR 96-7 in discrediting Plaintiff's credibility. See Resntrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012). "The ALJ is 'not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting a claimant's subjective complaints.'" Partee v. Astrue, 638 F.3d 860, 865 (8th Cir. 2011) (quoting Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). Because the ALJ's determination to discredit Plaintiff's subjective complaints is supported by good reasons and substantial evidence, the Court defers to his determination. See e.g., Renstrom, 680 F.3d at 1067; Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006).

### III.    Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.  Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of March, 2017